UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAN DIEGO COUNTY LODGING ASSOCIATION,<br><br>                              Plaintiff,<br><br>v.<br><br>THE CITY OF SAN DIEGO; and UNITE HERE LOCAL 30,<br><br>                              Defendants. | Case No.:  20-cv-2151-WQH-MDD<br><br>**ORDER** |

HAYES, Judge:

The matter before the Court is the Motion for Summary Judgment or, in the Alternative, Partial Summary Judgment filed by Plaintiff San Diego County Lodging Association. (ECF No. 11).

## I.    BACKGROUND

On November 3, 2020, Plaintiffs, including San Diego County Lodging Association ("SDCLA")[1], filed a Complaint against Defendant City of San Diego ("City"), challenging the "City of San Diego COVID-19 Building Service and Hotel Worker Recall Ordinance," San Diego, Cal. Ordinance 21231 (Sept. 8, 2020) (the "Ordinance"), which requires certain

---

[1] SDCLA is the only remaining Plaintiff. (*See* ECF No. 8).

employers to offer open positions to qualified, laid-off employees before hiring new applicants. (ECF No. 1 ¶ 1). In the Complaint, Plaintiff SDCLA alleges that the Ordinance unlawfully interferes with the right of hotel employers "to terminate employees at-will [because], absent good cause for the termination, they must re-hire anyone previously fired" or face civil liability. (*Id.* ¶ 22). SDCLA further alleges that the Ordinance unlawfully impairs severance agreements and "may be at-odds" with collective bargaining agreements. (*Id.* ¶ 39).

SDCLA alleges seven causes of action, including a claim for declaratory relief based on the Contracts Clauses of the United States and California Constitutions (employment contracts) (first cause of action) and a claim for declaratory relief based on Article XI, section 7, of the California Constitution (Cal. Lab. Code § 2922) (fifth cause of action). SDCLA seeks a declaratory judgment that the Ordinance is void, a permanent injunction preventing "'laid-off employee[s]'—as that term is defined in the Ordinance—from taking any action under, enforcing any provisions of, or demanding a covered employer abide by the requirements set by, the Ordinance," and attorneys' fees and costs. (*Id.* at 15-16 (alteration in original)).

On February 4, 2021, SDCLA filed a Motion for Summary Judgment or, in the Alternative, Partial Summary Judgment. (ECF No. 11).

On February 5, 2021, Defendant City filed a Motion to Dismiss (ECF No. 12), and Unite Here Local 30 ("Local 30") filed a Motion to Intervene as a defendant (ECF No. 13). On May 3, 2021, the Court granted Local 30's Motion to Intervene. (ECF No. 24). On May 6, 2021, Local 30 filed a Motion to Dismiss. (ECF No. 25). On July 8, 2021, the Court issued an Order denying Defendants' Motions to Dismiss as to the first and fifth claims and otherwise granting the Motions to Dismiss. (ECF No. 29).

On August 5, 2021, Defendants filed Oppositions to SDCLA's Motion for Summary Judgment. (ECF Nos. 35, 36). On August 17, 2021, the State of California ("State") filed a Brief of Amicus Curiae in Opposition to SDCLA's Motion for Summary Judgment. (ECF No. 41). On August 19, 2021, SDCLA filed a Reply. (ECF No. 43).

On September 2, 2021, the Court heard oral argument on the Motion for Summary Judgment. (ECF No. 47).

On September 3, 2021, Local 30 filed a Notice of Supplemental Authority in Opposition to SDCLA's Motion for Summary Judgment. (ECF No. 48). On September 10, 2021, SDCLA filed a Response to Local 30's Notice of Supplemental Authority. (ECF No. 49).

## II.   CONTENTIONS

Plaintiff SDCLA moves for summary judgment "of all claims" or, in the alternative, "for summary judgment on all such claims as the Court deems appropriate."[2] (ECF No. 11 at 2). SDCLA contends that the Ordinance violates the Contracts Clauses of the United States Constitution and California Constitution because it severely modifies existing at-will employment contracts and is not narrowly tailored. SDCLA further contends that the Ordinance is preempted by section 2922 of the California Labor Code, which codifies at-will employment, because the Ordinance contradicts section 2922 and regulates an area that the state legislature intended to fully occupy.

Defendants contend that the Ordinance does not violate the Contracts Clauses because it does not substantially impair any existing at-will employment contract, and it serves the significant and legitimate public purpose of aiding economic recovery from the COVID-19 pandemic. Defendants further contend that the Ordinance does not contradict section 2922 of the California Labor Code, and the legislature has explicitly stated its intent not to preempt municipal recall laws.

Amicus State contends that the Ordinance "serve[s] a significant public purpose by increasing economic security for low-wage workers, helping to revitalize the State's

---

[2] The Court has dismissed all causes of action except the first cause of action for declaratory relief based on the Contracts Clauses of the United States and California Constitutions (employment contracts) and the fifth cause of action for declaratory relief based on Article XI, section 7, of the California Constitution (Cal. Lab. Code § 2922). (*See* ECF No. 29). The Motion for Summary Judgment is denied as moot as to all claims except for the first and fifth claims.

economy and ensuring a fair and equitable recovery for all Californians." (ECF No. 41 at 2). The State further contends that California has a "long history of regulating the employment relationship in favor of protecting workers," and recall laws "are wholly consistent with these policies and present no conflict with at-will employment." (*Id.*).

## III.   FACTS

On January 31, 2020, the Secretary of Health and Human Services declared a nationwide public health emergency in response to the spread of COVID-19. In March 2020, the Governor of California proclaimed a state of emergency, and the San Diego City Council ratified the Mayor of San Diego's proclamation of a local emergency.

The COVID-19 pandemic has had a devastating effect on the San Diego hospitality industry. A Staff Report to the San Diego City Council dated August 25, 2020, stated:

> [T]he COVID-19 pandemic has caused building service, hospitality, and travel-related employers in the City to discharge, layoff, and furlough workers at a massive scale. Between March and April approximately 88,100 leisure and hospitality workers in the San Diego metropolitan statistical area lost their jobs, or 46% of the industry's workforce in that area, with only 43,330 of those jobs having returned as of July 2020 estimates.

(ECF No. 35-3 at 2).[3] A Staff Report to the San Diego City Council dated September 2, 2020, stated that in June 2020, the occupancy rate at San Diego hotels was 36%—down 59% from June 2019. The Staff Report stated that "[t]he average daily rate at those hotels

---

[3] Defendants filed Requests for Judicial Notice, which Plaintiff SDCLA does not oppose. (ECF Nos. 35-1, 36-1). Pursuant to Rule 201 of the Federal Rules of Evidence, the court may take judicial notice of "matters of public record" and facts that are "not subject to reasonable dispute because" the facts "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2); *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001). The Court takes judicial notice of: (1) San Diego, Cal. Ordinance 21231 (Sept. 8, 2020); (2) San Diego, Cal. Ordinance 21236 (Mar. 2, 2021); (3) the City of San Diego Staff Report dated August 25, 2020; and (4) the list of California municipal ordinances that limit an employer's right to discharge an at-will employee. The Court declines to take judicial notice of the remaining requested documents, which the Court does not rely on in this Order. *See Asvesta v. Petroutsas*, 580 F.3d 1000, 1010 n.12 (9th Cir. 2009) (denying request for judicial notice where judicial notice would be "unnecessary").

was 41% lower than last year, which has devastated revenues and tax collections." (ECF No. 11-5 at 2). The Staff Report stated that full hotel revenue recovery is not expected until 2024.

On September 8, 2020, the San Diego City Council adopted the "City of San Diego COVID-19 Building Service and Hotel Worker Recall Ordinance," adding Chapter 3, Article 11, Division 1, to the San Diego Municipal Code. (ECF No. 36-1 at 24). The Ordinance states:

> Since the declaration of a national public health emergency on January 31, 2020, the COVID-19 pandemic has caused many building service, hospitality, and travel-related employers in the *City* to discharge, lay off, and furlough workers. Through this Division, the *City* seeks to ensure that these workers enjoy a right to return to their previous jobs when business activity resumes in order to aid economic recovery.

(*Id.* at 26, San Diego Mun. Code § 311.0101).

The Ordinance provides that a covered employer "must offer its *laid-off employees* . . . all job positions which become available after this Division's effective date [September 8, 2020] for which the *laid-off employees* are qualified." (*Id.* at 28-29, § 311.0104(a)). An employee is qualified for a position if they "held the same or similar position" when they were separated from service or "is or can be qualified for the position with the same training that would be provided to a new employee hired into that position." (*Id.* at 29, § 311.0104(a)(1)-(2)). Laid-off employees who "held the same or similar position" are entitled to preference. If more than one employee is qualified for a position, "the *employer* must offer the position to the *laid-off employee* with the greatest *length of service* for the *employer*." (*Id.*, § 311.0104). The Ordinance includes notice and recordkeeping requirements. (*See id.* at 30, § 311.0104(c)-(e)).

Employers covered by the Ordinance include commercial property employers, event center employers, and "hotel employer[s]"—"owner[s], operator[s], or manager[s] of a residential building located within the geological boundaries of the [City of San Diego]

20-cv-2151-WQH-MDD

with at least 200 guest rooms that provides temporary lodging in the form of overnight accommodations to transient patrons." (*Id.* at 27, § 311.0103). A "laid-off employee" is

> any individual [other than a "manager, supervisor, or confidential employee"] who, in a particular week, performs at least two hours of work within the geological boundaries of the [City of San Diego] for an *employer*, has a *length of service* with the *employer* of six months or more in the 12 months preceding March 4, 2020, . . . and whose most recent separation from active service, or failure to be scheduled for *customary seasonal work*, occurred on or after March 4, 2020, and before any termination of the Declaration of Emergency proclaimed by California's Governor on March 4, 2020, and was due to a government shutdown order, lack of business, a reduction in force or other, economic, non-disciplinary reason.

(*Id.* at 28, § 311.0103). "A *laid-off employee* may bring an action in the Superior Court of the State of California against an *employer*" for violations of the Ordinance and may be awarded hiring and reinstatement rights, actual or statutory damages, punitive damages pursuant to section 3294 of the California Civil Code, and attorneys' fees and costs. (*Id.* at 31, § 311.0106).

The Ordinance contains a sunset provision that states:

> This Division will be effective immediately from the date of adoption by the City Council and will remain effective for six months from the date of adoption and as of that date is repealed unless California Assembly Bill 3216 is chaptered, in which case, this Division will be repealed on January 21, 2021, unless Council adopts a resolution that extends that date.

(*Id.* at 32, § 311.0109). The Ordinance was set to expire on March 8, 2021. On March 2, 2021, the City Council adopted Ordinance 31236, which amended the sunset provision and extended the expiration date of the Ordinance to March 8, 2022, "at which time this Division shall be automatically repealed unless an extension is approved by majority vote of the City Council." (ECF No. 36-1 at 61, San Diego Mun. Code § 311.0209).

Plaintiff SDCLA "is a federation of hotel and motel owners and operators representing approximately 21,000 rooms in lodging establishments throughout the

6

county." (ECF No. 11-2 ¶ 1).[4] SDCLA represents hotel and motel owners that operate hotels with over 200 guest rooms in the City of San Diego who are subject to the terms of the Ordinance. "Hotel A" is a member of SDCLA that has over 200 guest rooms and operates within the City of San Diego. (*Id.* ¶¶ 2-4). Hotel A "has an at-will employment relationship with its workforce" and "requires employees [to] sign an acknowledgement of at-will employment." (*Id.* ¶¶ 15-16). "By signing the acknowledgement of at-will employment, Hotel A's workers affirm 'the employment relationship between the Company and me can be terminated with or without cause and/or notice at any time, at the option of myself or the Company.'" (*Id.* ¶ 17).

## IV.   LEGAL STANDARD

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the initial burden of demonstrating that summary judgment is proper. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 153 (1970). Where the party moving for summary judgment bears the burden of proof at trial, the moving party "must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992).

If the moving party meets the initial burden, the burden shifts to the opposing party to show that summary judgment is not appropriate. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986). The nonmoving party cannot defeat summary judgment by demonstrating "that there is some

---

[4] Defendants did not file any response to SDCLA's Statement of Undisputed Material Facts, as required by the Chambers Rules of the Honorable William Q. Hayes. (*See* Chambers Rules available on the Court's website at https://www.casd.uscourts.gov/judges/chambers-rules.aspx ("Any opposition to a summary judgment motion must include a response to the separate statement of undisputed material facts.")). The Court relies on assertions that have evidentiary support.

20-cv-2151-WQH-MDD

metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmoving party must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324. "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial,' and summary judgment is appropriate." *Zetwick v. County of Yolo*, 850 F.3d 436, 441 (9th Cir. 2017) (quoting *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009)).

## V.   CONTRACTS CLAUSE

Plaintiff SDCLA contends that the Ordinance violates the Contracts Clauses of the United States Constitution and California Constitution. SDCLA contends that the Ordinance severely modifies existing at-will employment contracts by replacing the right of hotel owners to terminate an employee "at-will" with "the option of suspending an employment contract." (ECF No. 11-1 at 10). SDCLA contends that the Ordinance is subject to a "high" level of scrutiny and is not narrowly tailored to its purpose of "ensuring laid-off San Diegans can return to work." (*Id.* at 14). SDCLA contends that "[t]here are a myriad of ways to serve that goal without further-burdening one of [the] industries hit the hardest by the pandemic," including by exempting existing at-will employment contracts or limiting recall rights to workers terminated because of the pandemic. (*Id.*).[5]

Defendants contend that the Ordinance does not substantially impair existing at-will employment contracts because it "does not prohibit termination or hiring of employees on an at-will basis," but rather "places conditions on future hiring decisions." (ECF No. 35 at

---

[5] SDCLA further asserts in the Motion for Summary Judgment that the Ordinance violates the Contracts Clauses because it unlawfully interferes with collective bargaining agreements. The Complaint does not allege any claim for violation of the Contracts Clauses based on collective bargaining agreements. SDCLA states in the Reply that it is not pursuing summary judgment at this stage in the litigation on a theory that the Ordinance violates the Contracts Clauses based on collective bargaining agreements. (*See* ECF No. 43 at 5 n.1).

10-11).[6] Defendants contend that the Ordinance serves the significant and legitimate public purpose of "ensur[ing] employees in the building service, hospitality and travel-related sectors laid off due to the COVID-19 pandemic have the ability to return to their previous jobs when business resumes to aid economic recovery." (*Id.* at 17). Defendants contend that "the Ordinance is limited in both time and scope for the express purpose of benefitting employees in a specific sector of San Diego's economy most impacted by the COVID-19 pandemic," and "the fact that Plaintiff can suggest solutions less burdensome to its members cannot be and never has been a basis to invalidate a municipal ordinance involving private contracts under the Contracts Clause." (*Id.*).

The United States Constitution and the California Constitution prohibit the passage of laws that impair the obligation of contracts. *See* U.S. CONST. art. I, § 10, cl. 1; CAL. CONST. art. I, § 9. The court applies a two-step test to determine whether a law violates the Contracts Clause of the United States Constitution. *See Sveen v. Melin*, 138 S. Ct. 1815, 1821 (2018). "The threshold issue is whether the [] law has 'operated as a substantial impairment of a contractual relationship.'" *Id.* at 1821-22 (quoting *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 244 (1978)). If a law operates as a substantial impairment, "the Court [asks] whether the [] law is drawn in an 'appropriate' and 'reasonable' way to advance 'a significant and legitimate public purpose.'" *Id.* at 1822 (quoting *Energy Reserves Grp., Inc. v. Kan. Power & Light Co.*, 459 U.S. 400, 411-12 (1983)). "Unless the state is a party to the contract, courts 'defer to legislative judgment as to the necessity and reasonableness of a particular measure.'" *Campanelli v. Allstate Life Ins. Co.*, 322 F.3d 1086, 1098 (9th Cir. 2003) (quoting *Energy Reserves*, 459 U.S. at 412-13)). A measure "must be upheld, even if it is a substantial impairment on contractual relations, if its 'adjustment of the rights and responsibilities of the contracting parties is based upon reasonable conditions and is of a character appropriate to the public purpose justifying the

---

[6] The contentions of Defendants City and Local 30 are materially the same. The Court cites to the Opposition filed by the City, which Local 30 joins. (*See* ECF No. 36 at 10).

legislation's adoption.'" *Apartment Ass'n of L.A. Cty. v. City of Los Angeles*, __ F.4th __, No. 20-56251, 2021 U.S. App. LEXIS 25539, at *17 (9th Cir., Aug. 25, 2021) (quoting *Energy Reserves*, 459 U.S. at 412). "[T]he federal Contract Clause analysis [is used] for determining whether a statute violates the parallel provision of the California Constitution." *Campanelli*, 322 F.3d at 1097.

In *Apartment Association of Los Angeles County v. City of Los Angeles*, a trade association of owners and managers of rental housing sought to enjoin key provisions of an eviction moratorium on the grounds that the moratorium violated the federal Contracts Clause. 2021 U.S. App. LEXIS 25539. Following the declarations of emergency related to the COVID-19 pandemic in early 2020, the City of Los Angeles imposed an eviction moratorium on residential landlords to "ensur[e] housing security and promot[e] public health during the pandemic." *Id.* at *6. The moratorium barred landlords from "endeavor[ing] to evict or evict[ing] a residential tenant" during the "Local Emergency Period[7] and for 12 months after its expiration" for "non-payment of rent . . . due to circumstances related to the COVID-19 pandemic," as defined by the moratorium. *Id.* at *9 (first and second alterations in original). The moratorium further barred landlords from evicting a residential tenant during the Local Emergency Period for a "no-fault reason," such as withdrawal of the property from the rental market, or for the "presence of unauthorized occupants or pets, or for nuisance related to COVID-19." *Id.* at *10. The moratorium created an affirmative defense in an unlawful detainer action and created "a private right of action for residential tenants who believe their landlords have aggrieved them." *Id.* at *11.

The district court denied the trade association's request for a preliminary injunction, and the Court of Appeals for the Ninth Circuit affirmed. The court of appeals "assum[ed]

---

[7] The eviction moratorium defined the "Local Emergency Period" as "the period of time from March 4, 2020, to the end of the local emergency as declared by the Mayor," which had not been declared ended at the time of the decision of the court of appeals. *Apartment Ass'n*, 2021 U.S. App. LEXIS 25539, at *10.

without deciding" that "the eviction moratorium is a substantial impairment of contractual relations," and held that, "given the challenges that COVID 19-presents, the moratorium's provisions constitute an 'appropriate and reasonable way to advance a significant and legitimate public purpose.'" *Id.* at *17-18 (quoting *Sveen*, 138 S. Ct. at 1822). The court stated:

> [The trade association] does not dispute that the eviction moratorium was enacted for a permissible public purpose . . . . [T]he district court properly deferred to local officials in the reasonableness analysis under the modern Contracts Clause precedent. . . . [W]e conclude that [the trade association] is unlikely to show that the eviction moratorium is an unreasonable fit for the problems identified.
>
> . . .
>
> The City fairly ties the moratorium to its stated goal of preventing displacement from homes, which the City reasonably explains can exacerbate the public health-related problems stemming from the COVID-19 pandemic. . . . [E]ach of the provisions of the eviction moratorium that [the trade association] challenges may be viewed as reasonable attempts to address that valid public purpose. . . . Thus, given the deferential standard that precedent constrains us to apply, we are compelled to conclude that the City's enactments pass constitutional muster under the Contracts Clause. Under current doctrine, we must "refuse to second-guess" the City's determination that the eviction moratorium constitutes "the most appropriate way[] of dealing the problems identified." *Keystone Bituminous* [*Coal Ass'n v. DeBenedictis*], 480 U.S. [470,] 506 [(1987)]. That is particularly so, based on modern Contracts Clause cases, in the face of a public health situation like COVID-19.

*Id.* at *17-20.

In this case, the San Diego City Council adopted the Ordinance for the stated purpose of ensuring that building service, hospitality, and travel-related workers who were discharged, laid off, or furloughed because of the COVID-19 pandemic "enjoy a right to return to their previous jobs when business activity resumes in order to aid economic recovery." (ECF No. 36-1 at 26, San Diego Mun. Code § 311.0101). The Ordinance was enacted for a permissible public purpose. Plaintiff SDCLA "can prevail, if at all, only if it

can show that the [Ordinance] w[as] not 'appropriate and reasonable.'" *Apartment Ass'n*, 2021 U.S. App. LEXIS 25539, at *18 (quoting *Sveen*, 138 S. Ct. at 1822).

The Ordinance requires hotel employers who operate temporary lodging accommodations with at least 200 guest rooms in the City of San Diego to offer open positions to qualified employees who were "separate[ed] from active service . . . on or after March 4, 2020, and before any termination of the Declaration of Emergency proclaimed by California's Governor on March 4, 2020, . . . due to a government shutdown order, lack of business, a reduction in force or other, economic, non-disciplinary reason" before hiring new applicants. (ECF No. 36-1 at 28, San Diego Mun. Code § 311.0103). The Ordinance contains notice and recordkeeping requirements and creates a private right of action against an employer for a violation of the Ordinance. Before adopting the Ordinance, the City Council determined that "workers in the San Diego service and hospitality industries" have been "especially impacted by layoffs" due to the COVID-19 pandemic. (*Id.* at 24). The City Council determined that businesses in the travel sector "cannot easily adjust to the lack of patronage," and "thousands more [hotel and janitorial service workers] are expected to face separation [from their jobs] in the coming months." (*Id.* at 24-25). The City Council determined that "the economy may better recover if impacted workers can return to their previous jobs as the COVID-19 pandemic reduces and business activities return to normal levels." (*Id.* at 25).

The City has fairly tied the requirements of the Ordinance to its stated purpose. The Ordinance addresses the issues identified by the City Council by requiring large employers (e.g., owners of hotels with over 200 guest rooms) in the sectors of the local economy most impacted by the pandemic to offer open positions to qualified employees who were terminated for an "economic, non-disciplinary reason" during the COVID-19 state of emergency. *Id.* at 28, § 311.0103; *see Apartment Ass'n*, 2021 U.S. App. LEXIS 25539, at *20 (the court "must refuse to second guess the City's determination that the [Ordinance] constitutes the most appropriate way [] of dealing with the problem[s] identified[,] . . . particularly . . . in the face of a public health situation like COVID-19" (citation omitted)).

The Ordinance is set to expire on March 8, 2022. (*See* ECF No. 36-1 at 59-60 (determination by the City Council that less than half of the City's leisure and hospitality jobs lost had returned by December 2020, and an additional 9,600 jobs were lost in November and December 2020, necessitating an extension of the sunset date of the Ordinance)). The Ordinance is a temporary measure to address a temporary, but ongoing issue. The Ordinance "may be viewed as [a] reasonable attempt[] to address [the City's] valid public purpose." *Apartment Ass'n*, 2021 U.S. App. LEXIS 25539, at *19. Assuming without deciding that the Ordinance substantially impairs contractual relationships, Plaintiff SDCLA has not met its burden to show that the Ordinance is not an "appropriate and reasonable way to advance a significant and legitimate public purpose." *Sveen*, 138 S. Ct. at 1822. SDCLA's Motion for Summary Judgment on the first claim for declaratory relief based on the Contracts Clauses of the United States and California Constitutions (employment contracts) is denied.

## VI.   STATE LAW PREEMPTION

Plaintiff SDCLA contends that the Ordinance is preempted by section 2922 of the California Labor Code, which codifies at-will employment. SDCLA contends that the Ordinance contradicts section 2922 by subjecting hotel employers to damages for acting in accordance with section 2922. SDCLA contends that the language and scope of section 2922 demonstrate that the legislature intended to fully occupy the field of at-will employment. SDCLA contends that the legislature has indicated an intent to leave at-will employment law unchanged, and the Ordinance interferes with uniform treatment of at-will employment throughout the state.

Defendants contend that the Ordinance does not contradict section 2922 because "employers retain discretion to terminate employees at will and to re-hire employees on an at-will basis." (ECF No. 35 at 19). Defendants contend that the legislature has expressed an intent not to preempt local legislation regulating employee recall rights, and at-will employment relationships are "subject to many legislative and judicial exceptions." (*Id.* at 20).

Local legislation that conflicts with California state law is preempted by the state law and void under the California Constitution. *See Sherwin-Williams Co. v. City of Los Angeles*, 4 Cal. 4th 893, 897 (1993); CAL. CONST. art. XI, § 7. "A conflict exists if the local legislation duplicates, contradicts, or enters an area fully occupied by general law, either expressly or by legislative implication." *City of Riverside v. Inland Empire Patients Health & Wellness Ctr., Inc.*, 56 Cal. 4th 729, 743 (2013) (quoting *Sherwin-Williams*, 4 Cal. 4th at 897). "[L]ocal legislation is 'contradictory' to general law when it . . . directly requires what the state statute forbids or prohibits what the state enactment demands." *Id.* "[N]o inimical conflict will be found where it is reasonably possible to comply with both state and local laws." *Id.* "A contradiction is generally found only when the state and local acts are irreconcilable, clearly repugnant, and so inconsistent that the two cannot have concurrent operation." *Valley Vista Servs., Inc. v. City of Monterey Park*, 118 Cal. App. 4th 881, 888 (2004).

"[L]ocal legislation enters an area that is 'fully occupied' by general law when the Legislature has expressly manifested its intent to 'fully occupy' the area, or when it has impliedly done so . . . ." *Inland Empire*, 56 Cal. 4th at 743 (quoting *Sherwin-Williams*, 4 Cal. 4th at 897-98). When the legislature is silent on preemption, the court "consider[s] factors including the language and scope of the adopted measure, the history behind the adopted measure, and the history of regulation in the area" to determine whether the legislature implicitly fully occupied a field. *Am. Fin. Servs. Ass'n v. City of Oakland*, 34 Cal. 4th 1239, 1261 (2005). "The party claiming that general state law preempts a local ordinance has the burden of demonstrating preemption." *Big Creek Lumber Co. v. County of Santa Cruz*, 38 Cal. 4th 1139, 1149 (2006). "'[A]bsent a clear indication of preemptive intent from the Legislature,' California courts presume that a local law in an area of traditional local concern 'is not preempted by state statute.'" *First Resort, Inc. v. Herrera*, 860 F.3d 1263, 1279 (9th Cir. 2017) (quoting *Big Creek Lumber*, 38 Cal. 4th at 827), *as corrected* (July 10, 2017).

1    Section 2922 of the California Labor Code provides that "[a]n employment, having
2    no specified term, may be terminated at the will of either party on notice to the other." Cal.
3    Lab. Code § 2922. Section 2922 "establishes a presumption of at-will employment that
4    may be overcome by evidence of express or implied contractual limitations on the right of
5    discharge imposed by public policy." *Semore v. Pool*, 217 Cal. App. 3d 1087, 1095 (1990)
6    (citing *Foley v. Interactive Data Corp.*, 47 Cal. 3d 654, 665 (1988)). Generally, the at-will
7    employment relationship "affords no expectation, protectible by law, that employment will
8    continue, or will end only on certain conditions, unless the parties have actually adopted
9    such terms." *Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 350 (2000). However, "an
10   employer does not enjoy an absolute or totally unfettered right to discharge even an at-
11   will employee. . . . [A]n employer's traditionally broad authority to discharge an at-
12   will employee 'may be limited by statute . . . or by considerations of public policy.'"
13   *Shapiro v. Wells Fargo Realty Advisors*, 152 Cal. App. 3d 467, 475 (1984) (quoting
14   *Tameny v. Atl. Richfield Co.*, 27 Cal. 3d 167, 172 (1980)).

15   In this case, the Ordinance requires covered employers to offer open positions to
16   qualified employees who were terminated during the COVID-19 Declaration of
17   Emergency "due to a government shutdown order, lack of business, a reduction in force or
18   other, economic, non-disciplinary reason" before hiring new applicants, or face civil
19   liability. (ECF No. 36-1 at 28, San Diego Mun. Code § 311.0103). The Ordinance does not
20   prohibit or penalize an employer for terminating an employee at-will. Section 2922 does
21   not prohibit the re-hiring of an employee terminated at-will. Plaintiff SDCLA has not met
22   its burden to show that the Ordinance and section 2922 are "irreconcilable, clearly
23   repugnant, and so inconsistent that the two cannot have concurrent operation." *Valley Vista*,
24   118 Cal. App. 4th at 888.

25   The state legislature has not expressly preempted local measures like the Ordinance.
26   *See Big Creek Lumber*, 38 Cal. 4th at 1149 (express preemption occurs when the legislature
27   has made an "express declaration" of "preemptive intent"). The relationship between
28   employers and employees has traditionally been regulated by both the state and local

governments. *See Cal. Grocers Ass'n v. City of Los Angeles*, 52 Cal. 4th 177, 197-98 (2011). The presumption of at-will employment codified in section 2922 has been limited by numerous state and local regulations. *See, e.g.*, Cal. Gov. Code § 12940(a) (prohibiting an employer from discharging an employee for a discriminatory reason); Cal. Lab. Code § 1061(d)-(e) (requiring a successor contractor during a "60-day transition employment period" to re-hire employees who were "not retained by the successor contractor" before hiring new applicants, and prohibiting the successor contractor from discharging without cause an employee retained by the successor contractor); ECF No. 36-1 at 85-87 (listing municipal ordinances limiting at-will employment).

Further, the state legislature has expressly stated its intent not to preempt local recall measures like the Ordinance. In April 2021, the legislature added section 2810.8 to the California Labor Code, which provides recall rights for employees terminated due to the COVID-19 pandemic that are nearly identical to the rights provided by the Ordinance. *See generally*, Cal. Lab. Code § 2810.8. Section 2810.8 provides, "Nothing in this section shall prohibit a local government agency from enacting ordinances that impose greater standards than, or establish additional enforcement provisions to, those prescribed by this section." *Id.* § 2810.8(f). Section 2922 and section 2810.8 are part of the same statutory scheme, and the intent of the legislature to allow local recall measures as declared in section 2810.8 weighs against a finding of implied preemption in this case. *See People ex rel. Deukmejian v. County of Mendocino*, 36 Cal. 3d 476, 485 (1984) ("In determining whether the Legislature has preempted by implication to the exclusion of local regulation we must look to the whole purpose and scope of the legislative scheme."); *see also Big Creek Lumber*, 38 Cal. 4th at 1157 ("[P]reemption by implication of legislative intent may not be found when the Legislature has expressed its intent to permit local regulations. Similarly, it should not be found when the statutory scheme recognizes local regulations."). Plaintiff SDCLA has not met its burden to show that the Ordinance enters an area fully occupied by state law. SDCLA's Motion for Summary Judgment on the fifth claim for declaratory relief

based on Article XI, section 7, of the California Constitution (Cal. Lab. Code § 2922) is denied.

**VII.   CONCLUSION**

    IT IS HEREBY ORDERED that the Motion for Summary Judgment or, in the Alternative, Partial Summary Judgment filed by Plaintiff San Diego County Lodging Association (ECF No. 11) is denied.

Dated:  September 16, 2021

Hon. William Q. Hayes
United States District Court